**Affirmed and Opinion filed October 24, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00934-CV

### VINMAR OVERSEAS SINGAPORE PTE LTD, Appellant

### V.

### PTT INTERNATIONAL TRADING PTE LTD, Appellee

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-21265**

## O P I N I O N

Appellant Vinmar Overseas Singapore PTE Ltd appeals the trial court's interlocutory order granting the special appearance of PTT International Trading PTE Ltd. Vinmar sued PTT, a business competitor, and Bhuvaraha Krishnan, Vinmar's former employee, after Krishnan left Vinmar to work for PTT. Vinmar asserted claims against PTT for misappropriation of trade secrets and confidential information, tortious interference with an employment agreement signed by

Krishnan, business disparagement, and conspiracy. We conclude that PTT lacks sufficient minimum contacts with Texas to permit the exercise of personal jurisdiction over it by Texas courts, and that PTT did not purposefully avail itself of the privileges and benefits of conducting activities within the forum. All of the acts of which Vinmar complains occurred in Singapore or overseas, and the few contacts to which Vinmar points are insufficient. We thus affirm the trial court's order granting PTT's special appearance and dismissing for want of jurisdiction Vinmar's claims against PTT.

## BACKGROUND

According to its pleadings, Vinmar trades in chemical commodities, primarily in Southeast Asia, Far East Asia, India, and the Middle East. It is a corporation organized under the laws of Singapore, "with its principal place of business in the United States located in Houston, Texas." Vinmar's former employee, Krishnan, is an Indian national permanently residing and working in Singapore. Vinmar employed Krishnan in 2010 as Business Head-Chemicals for Southeast Asia. As part of that employment, Krishnan signed an employment agreement containing non-solicitation and non-disparagement clauses. Although Krishnan lived and worked in Singapore, the agreement contained a provision stating, in all capital letters, that the agreement would be governed by the laws of the State of Texas. In the agreement, Krishnan expressly consented to the personal jurisdiction of the state and federal courts located in Texas for claims arising from or relating to the agreement. The record does not disclose where Vinmar and Krishnan executed the agreement, but it does establish that Krishnan lived and worked in Singapore.

A few years after signing the employment agreement, Krishnan left Vinmar and began working for PTT in Singapore. PTT is a Singapore corporation registered to conduct business, and headquartered in, Singapore. PTT trades in oil and other

2

chemical commodities primarily in Southeast Asia, Far East Asia, India, and the Middle East. Vinmar alleges that Krishnan breached his agreement with Vinmar by disclosing to PTT Vinmar's confidential information, soliciting Vinmar's Singaporean and Indian customers, and disparaging Vinmar in the marketplace.

Vinmar brought suit against Krishnan for breach of the employment agreement, misappropriation of trade secrets and confidential information, business disparagement, and civil conspiracy. Against PTT, Vinmar asserted claims for misappropriation of trade secrets and confidential information, business disparagement, tortious interference with the employment agreement by inducing Krishnan to violate the agreement, and civil conspiracy.

PTT filed a special appearance that it later amended.[1] In the Amended Special Appearance, PTT asserted that it lacked sufficient contacts with Texas to subject it to the jurisdiction of Texas courts. Specifically, PTT contended that Vinmar had not alleged any facts that PTT committed a tort "in whole or in part" in Texas and that, although Krishnan had done so in the employment agreement, PTT had not consented to the jurisdiction of Texas courts. PTT attached the declaration of Vaitayang Kullavanijaya, in which he averred, on behalf of PTT, that PTT is a Singaporean company, registered to conduct business in Singapore, with its principal place of business in Singapore. He further stated that PTT has no office in Texas, has never had an office in Texas, has no registered agent for service of process in Texas, and does not maintain any bank accounts in Texas, nor own any property in Texas. Kullavanijaya averred that all of PTT's business dealings with Vinmar occurred in Singapore, that all acts concerning employment of Krishnan occurred in Singapore, and that Vinmar is a Singaporean company with its headquarters located

---

[1] Krishnan has not contested the assertion of personal jurisdiction over the claims asserted by PTT against him by Texas courts and he is not a party to this appeal.

3

in Singapore. Finally, Kullavanijaya averred that the parties currently were involved in litigation, based on the same facts at issue in this suit, in Singapore.

In its response in opposition to the special appearance, Vinmar asserted that Krishnan was a party to the agreement, that he went to work for PTT while still under the restrictions of the agreement, Krishnan directly contacted Vinmar's customers that he previously serviced at Vinmar, that PTT was put on notice of the agreement and the Texas choice-of-law and forum-selection clause, PTT and Krishnan refused to cease and desist from contacting Vinmar's customers and disparaging Vinmar. Vinmar argued that these allegations were sufficient for the exercise of specific jurisdiction over PTT on the claims arising from the agreement.

The trial court disagreed and granted PTT's Amended Special Appearance. Vinmar now appeals the trial court's order granting the special appearance and dismissing Vinmar's claims against PTT.

## ANALYSIS

In a single issue Vinmar contends the trial court erred in granting PTT's Amended Special Appearance. In the argument section of its brief, Vinmar describes the legal issue in the case as follows: "[w]here a nonresident defendant employs a former employee of the plaintiff who is bound by a contractual agreement not to solicit the plaintiff's customers or disparage the plaintiff and where that agreement contains a Texas forum selection and choice of law provision, is the nonresident defendant subject to jurisdiction in Texas where that nonresident defendant is put on notice of the agreement and continued to employ the employee who is violating the agreement?" Because PTT did not enter into the employment contract with Vinmar, had no contacts with Texas, and committed no tort in whole or in part in Texas, we answer Vinmar's question "no."

4

## I.    Standards of review

Whether the trial court may exercise personal jurisdiction over PTT is a question of law, which we review de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). In deciding the jurisdictional issue, the trial court frequently must resolve questions of fact. *Id.* When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts that are necessary to support the trial court's judgment and supported by the evidence. *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017).

*The jurisdictional framework*

Our jurisdictional analysis includes both federal and state law precepts. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). The exercise of personal jurisdiction over a nonresident defendant must satisfy two requirements. First, the Texas long-arm statute must grant jurisdiction. Second, the exercise of jurisdiction must comport with federal and state constitutional guarantees of due process. *Id.*; *Moring v. Inspectorate Am. Corp.*, No. 14-16-00898-CV, 2017 WL 3158893, at *3 (Tex. App.—Houston [14th Dist.] July 25, 2017, pet. filed).

Vinmar has asserted tort claims against PTT. The Texas long-arm statute permits the exercise of jurisdiction over a nonresident who commits a tort "in whole or in part" in this state. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2) (West 2015). The plaintiff and defendant bear shifting burdens of proof in a personal jurisdiction challenge. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff must first plead allegations sufficient to confer jurisdiction under the long-arm statute. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013); *Kelly*, 301 S.W.3d at 658. Once the plaintiff meets this initial burden, the burden shifts to the nonresident defendant to negate all

potential bases for personal jurisdiction. *Kelly*, 301 S.W.3d at 658; *Moring*, 2017 WL 3158893, at *3. "If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 658-59.

The exercise of personal jurisdiction comports with federal and state constitutional guarantees of due process when (1) the defendant has established minimum contacts with the forum state; and (2) the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Searcy*, 496 S.W.3d at 66 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

*Minimum contacts and specific jurisdiction*

Minimum contacts with a forum may give rise to either general or specific jurisdiction. *Id.* at 67. Vinmar does not allege general jurisdiction as a basis for exercising personal jurisdiction over PTT; thus, we focus our analysis on specific jurisdiction principles. Specific jurisdiction exists if the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007). When specific jurisdiction is at issue, we must determine whether there is a substantial connection between the alleged forum contacts and the "operative facts" of the litigation. *See id.* at 585; *see also Moncrief*, 414 S.W.3d at 150. We analyze the jurisdictional contacts for a substantial connection with the operative facts of the case on a claim-by-claim basis, unless all of the claims arise from the same forum contacts. *See Moncrief*, 414 S.W.3d at 150-51; *Ren v. ANU Res., LLC*, 502 S.W.3d 840, 849 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Under the specific jurisdiction rubric, the nonresident defendant must have

purposefully availed itself of the privilege of conducting activities within the forum. *See M&F Worldwide corp.*, 512 S.W.3d at 890 ("In sum, specific personal jurisdiction over a nonresident defendant requires the defendant's purposeful availment of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."). The "purposeful availment" inquiry has three features: (1) the relevant contacts are those of the defendant, and the unilateral activity of another person or a third party are not relevant; (2) the contacts that establish purposeful availment must be purposeful, rather than random, fortuitous, isolated, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction. *See id.* at 886.

Both the Supreme Court of the United States and the Supreme Court of Texas make clear that it is the defendant's, rather than the plaintiff's, contacts with the forum that are dispositive. *See Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1122, 188 L. Ed.2d 12 (2014) ("[t]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."); *Searcy*, 496 S.W.3d at 67-68 ("the mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum [s]tate does not suffice to authorize jurisdiction.") (quoting *Walden*, 134 S. Ct. at 1126). Even where the defendant knows the brunt of the injury will be felt by a particular resident of the forum state, mere knowledge alone is insufficient to establish purposeful availment. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005).

If we determine PTT had sufficient minimum contacts with Texas and the contacts are substantially connected to the claims asserted by Vinmar, we then determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *See Fjell Tech. Grp. v. Unitech Int'l, Inc.*, No. 14-

7

14-00255-CV, 2015 WL 457805, at *9 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (mem. op.). In most cases, where a defendant has minimum contacts with a forum state, the exercise of jurisdiction will not conflict with notions of fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 154-55; *RSM Prod. Corp. v. Global Petroleum Grp., Ltd.*, 507 S.W.3d 383, 392 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

## II.    The jurisdictional allegations and evidence

In reviewing whether a plaintiff has met its initial burden of alleging jurisdictional facts sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute, we consider the plaintiff's pleadings and its response to the defendant's special appearance. *See Perna v. Hogan*, 162 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In its live pleadings and response to the special appearance, Vinmar has asserted the following jurisdictional facts:

- Krishnan agreed to an employment contract that contained a consent to Texas jurisdiction, Texas forum selection, and Texas choice of law.

- Vinmar put PTT on notice of the employment contract between Krishnan and Vinmar with the Texas choice of forum and choice of law provisions but PTT nevertheless participated in misappropriation and other tortious conduct arising from the employment contract.

- The logistical operations underlying certain of the transactions that Defendants interfered [sic] took place in Houston, Texas.

- A tort was committed in Texas.

- PTT and Krishnan upset Vinmar's relationship with Visen, an Indian company.

- PTT encouraged and induced Krishnan to breach the employment contract.

- Krishnan and PTT disparaged Vinmar in the marketplace by making false statements of fact of and concerning Vinmar to numerous current and prospective customers of Vinmar.

8

- PTT and Krishnan misappropriated Vinmar's trade secrets and confidential information, such as customer information, for their own benefit.

- PTT willfully and intentionally interfered with the employment agreement between Vinmar and Krishnan by inducing Krishnan to breach his employment agreement for the benefit of PTT.

- PTT and Krishnan conspired to commit the torts of misappropriation of trade secrets and confidential information and business disparagement.

- PTT is bound by the consent to jurisdiction of Texas courts contained in the employment agreement between Vinmar and Krishnan because Vinmar's tort claims arise from that contractual relationship and PTT is a "transaction participant."

- PTT is bound to the consent to jurisdiction of Texas courts contained in the employment agreement between Vinmar and Krishnan because PTT is "closely related" to Krishnan.

In its response to the amended special appearance, Vinmar submitted the declaration of Devang Mehta, a Senior Vice-President of a Vinmar affiliate and the supervisor of Krishnan while Krishnan worked at Vinmar. Mehta averred that:

- A Vinmar employee named Verma sent an email to Krishnan and PTT in which he informed Krishnan and PTT that Krishnan clearly breached the confidentiality requirement of the employment agreement.

- Mehta advised a PTT representative in a telephone call and follow up email that Krishnan was "bound by the Confidentiality Agreement not to solicit Vinmar's customers and not to disparage Vinmar."

- Mehta informed the PTT representative in that telephone conversation that he [Mehta] was based in Houston, Texas.

- PTT and Krishnan disrupted Vinmar's relationships with TPX (a Thai Oil Company), Haldia Petrochemicals (an Indian company), Indian Oil Corporation, Ltd. (an Indian company), and ONGC Mangalore Petrochemicals Ltd. (an Indian Company).

## A. Vinmar did not plead a tort committed in whole or in part in Texas.

Vinmar does not allege in any of its live pleadings or its response to the Amended Special Appearance the location for any of the alleged acts by PTT or

9

Krishnan. Vinmar alleged that Krishnan and PTT misappropriated its trade secrets and confidential information, but it does not allege that the misappropriation occurred in whole or in part in Texas. Likewise, Vinmar does not allege facts showing where the alleged tortious interference with the employment agreement occurred, where the alleged business disparagement occurred, or where the alleged conspiracy occurred. Vinmar did not allege that Krishnan and PTT interfered with, or disparaged it to, any Texas customers or companies. Vinmar states that the alleged business disparagement happened in the marketplace, but it does not define the marketplace. Personal jurisdiction is grounded on the defendant's actions and choices to enter the forum state and conduct business. *See Kelly*, 301 S.W.3d at 660. When the plaintiff fails to allege an act by the defendant occurring in Texas, the plaintiff has not met its initial burden of pleading acts sufficient to invoke jurisdiction over the nonresident defendant. *Id.* at 660-61; *see also Moncrief*, 414 S.W.3d at 153, 157 (nonresident defendant subject to jurisdiction for misappropriation of trade-secrets claim where defendant obtained the trade secrets in Texas, but not for tortious interference claim where alleged acts of interference occurred outside of Texas).

PTT submitted evidence affirmatively stating that (1) PTT is not a Texas corporation, nor does it have any offices or places of business in Texas; (2) it did not misappropriate any of Vinmar's confidential information and trade secrets in Texas; (3) it did not make any false statements of fact concerning Vinmar to any current or prospective customers in Texas; (4) PTT's discussions with Krishnan and employment of Krishnan took place solely in Singapore; and (5) all acts concerning PTT's employment of Krishnan and PTT's business dealings with Vinmar occurred in Singapore. The record contains no evidence to the contrary. We conclude that this evidence is sufficient to negate jurisdiction on the basis of a direct tort committed in

whole or in part in Texas. *See Kelly*, 301 S.W.3d at 661.

## B. The Krishnan-Vinmar employment agreement does not support jurisdiction.

Vinmar argues that it did plead sufficient facts for the court to exercise specific jurisdiction based on two theories. First, Vinmar argues that, under the "effects test," PTT is subject to specific jurisdiction because it knew Krishnan had an employment agreement that contained a Texas forum-selection and choice-of-law clause. Second, Vinmar argues it can enforce the forum-selection clause contained in Krishnan's contract with Vinmar against PTT based on a "closely-related party" theory. We address each theory in turn.

### 1. *The "effects test" does not apply.*

The "effects test" finds its genesis in the United States Supreme Court decision of *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, two nonresident defendants published allegedly libelous magazine articles about the plaintiff and disseminated the articles in the plaintiff's home state of California. *See id.* at 785-86. The Court addressed whether a nonresident defendant is subject to jurisdiction in a forum where the defendant, while outside the state, directs a tort toward a plaintiff in the state and the plaintiff feels the "brunt of the injury" in the state. *Id.* at 789-90. Because the defendants in that case expressly and intentionally aimed allegedly tortious acts at California, and considering the "effects" of the defendants' out-of-state conduct would be felt in California, the Court found the out-of-state defendants were subject to jurisdiction because they reasonably could anticipate being haled into a California court. *Id.*

In *Walden v. Fiore*, the Court revisited the *Calder* opinion and explained that, due to the nature of the libel tort and the fact that the injury occurs through the dissemination of false statements about the plaintiff, "the defendants' intentional tort

11

actually occurred *in* California." 134 S. Ct. at 1124. The Court took pains to narrow the application of the *Calder* "effects test" and reiterated that in all cases "a forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by *the defendant* that creates the necessary contacts with the forum." *Id*. at 1123 (emphasis added). The mere fact that the plaintiff resides in the forum and feels the effects of the tort in the forum is insufficient. *Id.* at 1125. In *Walden*, as in this case, all of the allegedly tortious conduct occurred outside of the forum state. *Id.* The Court emphasized that jurisdiction will not lie where the only link between the defendant and the forum is the plaintiff's residence in the forum state, even when the defendant knows the plaintiff will feel the effects of the tort in the forum. *See id.*

Texas courts are in accord. In *Searcy*, the Supreme Court of Texas noted that Texas courts had interpreted *Calder* the same way the Court did in *Walden*. *See Searcy*, 496 S.W.3d at 68-69 (citing *Michiana Easy Livin' Country, Inc.*). Thus, "[e]ven if a nonresident defendant *knows* that the effects of its actions will be felt by a resident plaintiff, that knowledge alone is insufficient to confer personal jurisdiction over the nonresident." *Id.* at 69 (emphasis in original). To hold otherwise would allow jurisdiction over the nonresident defendant on the basis of the unilateral activity of the plaintiff, rather than on purposeful contacts with the forum by the defendant.[2] *See id.*at 70.

---

[2] For this same reason, Vinmar's reference on appeal to its own contacts with Texas is unpersuasive. Vinmar cites the fact that it had logistical operations in Houston, and its representative Mehta informed PTT that he [Mehta] was based in Houston. The fact that Vinmar had logistical operations in Texas and a representative informed PTT in a telephone call that the representative was based in Houston are the type of random or fortuitous contacts the court rejected in *Searcy* as insufficient to confer jurisdiction. *See Searcy*, 496 S.W.3d at 73. And, given that none of the claims asserted against PTT arise out of the logistical operations in Houston, the lack of a substantial connection between the logistical operations in Houston and the operative facts of the litigation precludes jurisdiction on that basis. *See Moki Mac*, 221 S.W.3d at 585.

In support of its argument that the "effects test" allows Texas courts to assert jurisdiction in this case, Vinmar relies on two federal court cases that pre-date the *Walden* decision: *Astro-Med, Inc. v. Nihon Hoden Am., Inc.*, 591 F.3d 1 (1st Cir. 2009) and *Medicus Radiology, LLC v. Nortek Med. Staffing, Inc.*, No. 10-CV-300-PB, 2011 WL 9373, at *5 (D. N.H. Jan. 3, 2011). We find both cases inapplicable.

In *Astro-Med, Inc. v. Nihon Hoden Am., Inc.*, the plaintiff was a Rhode Island corporation with its principal place of business in Rhode Island. 591 F.3d at 6. The plaintiff sued the defendant in Rhode Island for tortious interference with its contractual relationship with a Florida-based sales employee. *Id.* at 7, 9. The defendant, a California corporation, asserted lack of personal jurisdiction because all of its direct dealings with the employee took place outside the forum. *Id.* at 10. Relying on *Calder*, the First Circuit Court of Appeals held that the defendant was subject to jurisdiction in Rhode Island because "a defendant need not be physically present in the forum state to cause injury (and thus activity) for jurisdictional purposes in the forum state." *Id.* (internal citations omitted). Of importance to the *Astro-Med* court was the fact that the defendant's conduct outside the forum caused the breach of contract that occurred in Rhode Island. Thus, the in-forum injury was clearly related to the tortious interference claim. *Id.* The court relied heavily on the fact that the defendant knew of the employment agreement and that it contained a Rhode Island choice-of-law provision before the defendant hired the employee. *See id.*

In *Medicus Radiology*, the federal district court in New Hampshire, held that the relatedness element discussed in *Astro-Med* was satisfied because the plaintiff, a forum resident, felt the effects of its injury in the forum state. 2011 WL 9373, at *4. Underpinning both *Astro-Med* and *Medicus Radiology* was the fact that the plaintiff had actually suffered effects of the defendant's out-of-state conduct in the forum and

13

thus jurisdiction existed under the "effects test" in *Calder*. *See Astro-Med.*, 591 F.3d at 10; *Medicus Radiology*, 2011 WL 9373, at *4 (relying on *Astro-Med*). Texas law, however, requires more than mere knowledge that a plaintiff suffered the effects of its injury in the forum—there must be conduct by the nonresident defendant aimed at the forum. *See Searcy*, 496 S.W.3d at 69; *TV Azteca v. Ruiz*, 490 S.W.3d 29, 43 (Tex. 2016) (noting there is a "subtle yet crucial difference between directing a tort at an individual who happens to live in a particular state and directing a tort at that state").

Where, as here, it is undisputed that no part of a nonresident defendant's course of conduct occurred in or was aimed at the forum state, the nonresident does not form jurisdictionally relevant contacts with the forum. *See Walden*, 134 S. Ct. at 1124 ("In short, when viewed through the proper lens—whether the *defendant's* actions connect him to the *forum*—petitioner formed no jurisdictionally relevant contacts with Nevada"). Vinmar has not alleged that any of the alleged tortious acts by PTT occurred in Texas. PTT has not targeted Texas, nor taken any acts to purposefully avail itself of the privileges and benefits of conducting activities within Texas. PTT has formed no jurisdictionally relevant contacts with Texas. To hold otherwise would shift the analytical focus from assessing the defendant's contacts with the forum to assessing the defendant's contacts with the plaintiff. *See id.*

Vinmar argues: "PTT is subject to Texas jurisdiction because it intentionally and knowingly employed Krishnan after being put on notice that Krishnan was subject to the Agreement and that Texas law governed the Agreement and that PTT and Krishnan were violating that Agreement. PTT profited from Krishnan's violation of the Agreement and assisted him in doing so, thereby purposefully availing itself of Texas' jurisdiction." We disagree. First, the evidence is undisputed that PTT did not know of the existence of the agreement or the application of Texas

law at the time PTT hired Krishnan. PTT did not seek out an employee that it knew was subject to an agreement governed by Texas law.[3]

Second, we do not agree that these circumstances show PTT purposefully availed itself of the privileges and benefits of conducting activities within Texas, as is required to assert personal jurisdiction. All of PTT's conduct occurred outside of Texas. PTT's mere knowledge of the existence of the employment agreement alone is not sufficient to establish minimum contacts with Texas for the same reason that mere knowledge that the effects of any injury will be felt by a resident plaintiff is insufficient. Such an analysis impermissibly puts the focus on the plaintiff's contacts with Texas, not on PTT's purposeful contacts with Texas. *See Walden*, 134 S. Ct. at 1122 (". . . the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State"); *Searcy*, 496 S.W.3d at 68-69 (knowledge of effects in forum alone is insufficient to confer personal jurisdiction over the nonresident defendant); *see also M&F Worldwide Corp.*, 512 S.W.3d at 889 (mere knowledge that Texas resident would manage Delaware company in Texas insufficient to constitute purposeful availment of Texas law); *TV Azteca*, 490 S.W.3d at 46-47 (mere knowledge that a broadcaster's programs will be received in another jurisdiction is insufficient; there must be additional conduct showing an intent to serve the forum state market).

Vinmar argues that PTT targeted Texas because it interfered with a "Texas contract" applying Texas law. While the inclusion of a Texas choice-of-law provision can be a relevant jurisdictional contact, PTT did not choose Texas law.

---

[3] PTT disputes whether it ever knew that Texas law governed the agreement. According to PTT, the evidence presented by Vinmar shows only that Vinmar informed PTT that Krishnan was breaching his employment agreement—the evidence does not show that Vinmar mentioned Texas law or that Vinmar provided PTT with a copy of the employment agreement. To the extent the evidence on this point is disputed, we imply all findings of fact in support of the trial court's judgment. *See M&F Worldwide Corp.*, 512 S.W.3d at 885.

PTT did not sign the agreement with Vinmar—Krishnan signed the agreement choosing Texas law. *Cf. RSM Prod. Corp.*, 507 S.w.3d at 394 (actions of co-defendants did not support jurisdiction over non-resident defendant). And, it is not clear from the record that the employment agreement signed by Krishnan is in fact a "Texas contract." The contract does not state where it is to be performed. Nor does the record disclose where the contract was executed. These factors are important. *See Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 665-66 (Tex. 1987) (execution of contract that was wholly performable in Texas and would provide profit from hotel to be built in Texas supported jurisdiction); *Nogle & Black Aviation, Inc. v. Faveretto*, 290 S.W.3d 277, 283 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting place of performance is an important factor); *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 17.041(1) (West 2015) (stating a defendant does business in Texas where it contracts with a Texas resident and the contract will be performed in whole or in part in Texas). The trial court, however, could have inferred from the evidence that the contract was to be performed and was executed overseas as that is where Krishnan lived and worked. Thus, the Texas choice-of-law and forum-selection provisions in the agreement do not support jurisdiction over non-signatory PTT.

Had there been some evidence that PTT intentionally targeted Texas, sought Texas assets, or sought Texas customers, our analysis might be different. *See, e.g.*, *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 73 (Tex. 2016) (defendant who targeted Texas assets and sought Texas seller was subject to jurisdiction); *TV Azteca*, 490 S.W.3d at 51-52 (defendant took "additional activity" in Texas by taking advantage of the fact that signals reached into Texas and to financially benefit from that fact). But, there is no evidence showing PTT intentionally targeted or intended to establish a contact with Texas.

16

PTT did not target any prospective or existing Texas customers of Vinmar. It did not target any Texas assets of Vinmar. Instead, it allegedly targeted an Indian employee of Vinmar located in Singapore, and allegedly sought Vinmar's trade secret and confidential information and customers in Singapore, Thailand, and India.[4]

There is no evidence that PTT sought some benefit, advantage, or profit by availing itself of the privileges and benefits of doing business in Texas. It did no business in Texas, committed no tort in Texas, nor allegedly caused any injury to Vinmar in Texas. Accordingly, the trial court lacks specific jurisdiction over PTT. *See M&F Worldwide Corp.*, 512 S.W.3d at 890.

## 2. *The "closely-related party" theory is inapposite.*

Vinmar also contends that Texas courts should exercise jurisdiction over PTT under the "closely-related party" theory because PTT was closely-related to Krishnan and the dispute.[5] We disagree.

Vinmar cites a federal district court case from Minnesota, *Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054 (D. Minn. 2008), in support of its argument. In *Endologix*, the plaintiff company sued two of its former employees and their new employer for breach of an employment agreement and tortious interference with the employment agreement. *Id.* at 1055. The employment agreement contained a forum-selection clause requiring claims to be litigated in the state courts of Minnesota. *Id.* at 1056. The new employer removed the case to federal court and the plaintiff then filed a motion to remand back to state court. *Id.* The district court held that the new

---

[4] By this legal analysis, we do not suggest that PTT actually committed these acts because courts do not rule on the merits of the claims at the special-appearance stage. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 790-91.

[5] In the trial court Vinmar also asserted jurisdiction based on the "transaction participant" theory, but Vinmar does not raise that ground on appeal. We thus do not address the "transaction participant" theory as grounds for jurisdiction.

17

employer was bound by the forum-selection clause as a closely-related party to the dispute. *Id.* The court noted that the new employer was fully aware of the employment agreements and forum-selection clauses when it hired the employees. *Id.* at 1056-57. The *Endologix* court did not address whether this theory could be used to assert personal jurisdiction over the new employer because personal jurisdiction was not at issue. *See id.* We find this non-binding authority unpersuasive.

More recently, the federal district court in Minnesota addressed the closely-related party theory and stated that it largely has been used "to enforce forum selection clauses against parties who are bound by a clearly common interest, such as a corporation and its subsidiary and spouses." *Medtronic, Inc. v. Ernst*, 182 F.Supp.3d 925, 932 (D. Minn. 2016). The Minnesota court further noted that the theory mostly applies where the non-contracting party voluntarily has associated or joined itself with the contracting party in some type of legal process, such as when the non-contracting party joins the plaintiff in filing legal proceedings in a certain forum. *See id.* at 933. The case involved facts similar to the instant case—a former employer sued an employee and its new employer alleging breach of the employment agreement and tortious interference with the agreement by the new employer. *Id.* at 931. The court refused to apply the closely-related party theory to bind the new employer to the forum-selection clause. *Id.* at 933. The court rejected an argument like the one Vinmar makes here that the new employer should be bound because it continued to employ the employee while aware of the non-compete and forum-selection clauses contained in the employment agreement. *Id.* The court relied on the fact that the new employer did not voluntarily join any litigation with the signatory. *Id.* Likewise, PTT is not a corporation, subsidiary, or spouse of Krishnan, and it did not voluntarily join Krishnan in litigation over the employment agreement.

It is unclear whether Texas courts have applied this theory, and we decline to in this case as we find the theory does not support the exercise of personal jurisdiction over PTT. *See Ernst*, 182 F.Supp.3d at 933.

The other cases cited by Vinmar in support of the closely-related party theory do not address the theory in the context of personal jurisdiction and do not assess whether due-process is satisfied. *See Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) (addressing motion to dismiss based on forum selection clause in agreement—not challenge to personal jurisdiction); *Mannetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 510 (9th Cir. 1988) (same). Vinmar has cited no Texas cases applying the closely-related party theory to allow the exercise of personal jurisdiction over a nonresident defendant. Though contract or agency theories may be used by non-signatories to enforce forum-selection clauses in contracts, *see, e.g.*, *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (noting six theories arising out of common principles of contract and agency law), such theories should not be used to bypass the constitutional due-process analysis required in personal jurisdiction cases. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007) (personal jurisdiction "involves due process considerations that may not be overridden by statutes or the common law").[6]

---

[6] We note that in *Carlile Bancshares, Inc. v. Armstrong*, the Fort Worth Court of Appeals analyzed whether direct-benefits estoppel and transaction-participant theories could be used to bind non-signatories and thereby gain personal jurisdiction over the non-signatories. Nos. 02-14-00014-CV, 02-14-00018-CV, 2014 WL 3891658, at **7-10 (Tex. App.—Fort Worth 2014, Aug. 7, 2014, no pet.). The court held that the presence of a valid and enforceable forum-selection clause circumvents the need to engage in a due process and minimum contacts analysis. *Id.* at *5. The cases cited by the *Carlile* court in support of this statement, however, involved contractual consent to jurisdiction—not assertion of personal jurisdiction over a non-contracting party on the basis of a consent-to-jurisdiction clause signed by another party. *See id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589, 111 S. Ct. 1522, 113 L.Ed.2d 622 (1991); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985); *Baker Hughes Inc. v. Brooks*, 405 S.W.3d 246, 249 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.—Dallas 2010, no pet.). We thus find those cases

Courts make clear that the assertion of personal jurisdiction over a nonresident defendant requires an assessment of each defendant's contacts individually, unless the corporate veil has been pierced. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13, 104 S. Ct. 1473, 79 L.Ed.2d 790 (1984); *Cornerstone Healthcare Grp.*, 493 S.W.3d at 71 (acknowledging settled law that "contacts of distinct legal entities, including parents and subsidiaries, must be assessed separately for jurisdictional purposes unless the corporate veil is pierced"); *see also Ahrens & DeAngeli P.L.L.C v. Flinn*, 318 S.W.3d 474, 486 (Tex. App.—Dallas 2010, pet. denied) (rejecting use of defendants' participation in alleged scheme to satisfy jurisdictional analysis because "jurisdiction must be based on whether a defendant itself purposefully established minimum contacts that satisfy due process."). PTT's contacts must be assessed separately from those of Krishnan or Vinmar, and the exercise of jurisdiction, if any, must be based on PTT's own conduct. We decline to find jurisdiction over PTT based on a closely-related party theory.

## CONCLUSION

The touchstone of jurisdictional due process is purposeful availment of the forum by the defendant. *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. There is simply no allegation or evidence showing that PTT purposefully availed itself of the privilege of conducting activities in Texas. The trial court correctly determined that Texas courts cannot exercise personal jurisdiction over

inapposite.

20

PTT. We overrule Vinmar's issue on appeal and affirm the order granting PTT's Amended Special Appearance.

/s/    John Donovan
Justice

Panel consists of Chief Justice Frost and Justices Donovan and Wise.