

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00356-CV

Richard **BALDARAMOS** and Rejuvya, LLC,
Appellants

v.

**METAMORPHOSIS CONSULTING, LLC**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-16894
Honorable Laura Salinas, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: December 11, 2019

REVERSED AND RENDERED

Richard Baldaramos and Rejuvya, LLC ("Rejuvya") appeal the trial court's order denying their special appearances asserting the trial court erred because Metamorphosis Consulting, LLC ("Metamorphosis") failed to meet its pleading burden and Baldaramos and Rejuvya negated all bases of jurisdiction pled by Metamorphosis. We reverse the trial court's order and render judgment dismissing the claims against Baldaramos and Rejuvya.

**BACKGROUND**

Metamorphosis filed the underlying lawsuit on September 5, 2018. The following facts are alleged in Metamorphosis's petition.

Baldaramos is a resident of Nevada, and Rejuvya is a Nevada limited liability company. On or about March 21, 2014, Metamorphosis entered into a contract ("Contract") with Jill Cole in which Cole paid Metamorphosis $100,332.00 in exchange for Metamorphosis's consulting services and a limited license to access Metamorphosis's trade secret materials (the "Trade Secrets"). The Contract provided the Trade Secrets could only be used by Cole in her practice and the limited license was not assignable to any other party. The Contract further provided Cole could not disclose the Trade Secrets to any party other than the parties specified in the Contract. When the Contract was signed, Cole was the sole member of Vitality Health Wellness Center, LLC, an Arizona limited liability company that operated a wellness center. The Contract provided it would be governed by Texas law and the sole place of venue for any legal action would be Bexar County, Texas.

In October of 2014, Baldaramos became a member of Vitality and was active in its management. As a result, he used the Trade Secrets in the operation of Vitality's business and also attended classes provided by Metamorphosis in San Antonio in which the Trade Secrets were discussed and diagrammed. Cole stored the Trade Secrets on a secure digital server owned by Dropbox, and Baldaramos had access to Cole's dropbox on the digital server. Sometime between October of 2014 and December of 2015, Baldaramos copied the Trade Secrets from Cole's dropbox to a thumb drive.

In December of 2015, Baldaramos and Cole ended their business relationship. At that time, Cole informed Baldaramos both verbally and in writing that he was no longer allowed to use her

license to access the Trade Secrets. Cole also instructed Baldaramos to destroy any copies of the Trade Secrets in his possession.

On April 21, 2016, Baldaramos and another defendant who is not an appellant formed a new Nevada limited liability company named Medela Centers, LLC which was later renamed Rejuvya, LLC. That entity opened a health center providing health-related goods and services in California. The health center was known as Health Renewal Centers on the date Metamorphosis filed its petition. Baldaramos provided an employee of the entity access to Cole's dropbox and/or the thumb drive and instructed the employee to familiarize herself with the Trade Secrets which were then used to facilitate the growth of the health center. In July of 2016, Metamorphosis refused to sell or license the Trade Secrets to Baldaramos and instructed him to stop using the Trade Secrets.

In its petition, Metamorphosis alleged claims against Baldaramos for misappropriation of trade secrets and conversion. Metamorphosis also alleged a claim against Rejuvya for conversion in retaining the Trade Secrets. Baldaramos and Rejuvya filed special appearances.

In his special appearance, Baldaramos asserted Metamorphosis failed to allege sufficient contacts to establish general jurisdiction over Baldaramos. In addition, Baldaramos asserted the alleged tort claims against him arose in December of 2015 when he allegedly used the Trade Secrets in Nevada and California after his business relationship with Cole ended. Baldaramos further asserted his attendance at one Metamorphosis training class in Texas in April or May of 2015 is not sufficient to establish specific jurisdiction because his attendance was authorized and his alleged actions misappropriating or converting the Trade Secrets occurred in December of 2015. Finally, Baldaramos asserted the exercise of personal jurisdiction over him would offend traditional notions of fair play and substantial justice. Baldaramos attached his affidavit to his special appearance in which he stated he resided in Nevada, never owned property in Texas, and

did not rent property or pay taxes in Texas since 1981. He further stated he attended only one training meeting in Texas in April or May of 2015 and spent two or three nights in San Antonio for purposes of attending that meeting. Finally, he stated no business entity with which he is affiliated has ever done or solicited business in Texas.

In its special appearance, Rejuvya asserted it is a Nevada limited liability corporation that was formed on November 20, 2018; therefore, Rejuvya was not formed until two months after Metamorphosis filed its petition. Rejuvya also asserted Metamorphosis failed to allege sufficient contacts to confer general jurisdiction in Texas. Rejuvya further asserted the conversion claim was based on Rejuvya's alleged unauthorized retention and use of the Trade Secrets which did not occur in Texas and could not have occurred before Metamorphosis filed its petition. Finally, Rejuvya asserted the exercise of personal jurisdiction over it would offend traditional notions of fair play and substantial justice. Rejuvya attached Baldaramos's affidavit to its special appearance stating Rejuvya does not own any property, pay taxes or conduct business in Texas.

Metamorphosis did not file a written response to the special appearances; however, its CEO, John Linton, was the sole witness who testified at the hearing on the special appearances held on May 2, 2019. Linton testified he first met Baldaramos at a three-day training conference Metamorphosis held in Texas. Baldaramos told Linton he was at the training with Cole to implement the Trade Secrets in Cole's practice. Baldaramos also asked Linton if he would pay him a commission to recruit or refer others to Metamorphosis's program. Linton informed Baldaramos that Metamorphosis did not pay any such commissions. Linton testified he stayed in sporadic contact with Baldaramos relating to Cole's practice. Baldaramos informed Linton when his business relationship with Cole ended and then approached Linton about using the Trade Secrets in a different practice with another practitioner. Although Metamorphosis's petition alleged the business relationship between Cole and Baldaramos ended on December 31, 2015,

Linton testified he thought the business relationship ended mid-November. Linton and Baldaramos had several conversations about the other possible practice resulting in Linton sending Baldaramos some cease and desist emails or text messages. Linton also had telephone conversations with Baldaramos's attorney. Eventually, Linton decided not to contract with Baldaramos based on his ethics and his continued unauthorized use of the Trade Secrets. Linton testified he believed Baldaramos had been using the Trade Secrets in an unauthorized manner before his business relationship with Cole ended in anticipation of starting a competing or similar practice. Linton further testified that after Baldaramos's business relationship with Cole ended, Baldaramos asked Cole's ex-husband to download some of the Trade Secret information from Cole's system and forward it to him. Linton believed from certain emails that Cole's ex-husband provided the information to Baldaramos. Linton testified Metamorphosis provided consultation by telephone from Texas and its Trade Secrets are stored on a server in Texas. Metamorphosis's clients access the Trade Secrets by an online secure portal. In addition, Metamorphosis offers quarterly meetings or conferences in Texas which clients can attend to receive training.

At the conclusion of the hearing, the trial court focused on the Contract being signed by only Cole and Metamorphosis and questioned Linton regarding Baldaramos's access to the Trade Secrets during his business relationship with Cole. In response to the trial court's question regarding whether Baldaramos was a shareholder of Vitality when Cole signed the Contract, Linton responded that he was. The trial court then announced it was denying the special appearances explaining Baldaramos was using the Trade Secrets he obtained as a shareholder of Vitality. On May 9, 2019, the trial court signed an order denying the special appearances, and Baldaramos and Rejuvya appeal.

**PERSONAL JURISDICTION AND STANDARD OF REVIEW**

"Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

"Texas's long-arm statute extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit." *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (internal quotation marks omitted). "Asserting personal jurisdiction comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice." *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150.

"A defendant establishes minimum contacts with a forum when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (internal quotation marks omitted). "Thus, the defendant's activities must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Bell*, 549 S.W.3d at 559 (internal quotation marks omitted).

The Texas Supreme Court has "explained that there are three parts to a 'purposeful availment' inquiry.'" *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). "First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person." *Id.* "Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated." *Id.* "Finally, the defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Id.* (internal quotation marks omitted).

"A defendant's contacts with the forum may give rise to either general or specific jurisdiction." *M & F Worldwide Corp.*, 512 S.W.3d at 885. "General jurisdiction is established by a defendant's continuous and systematic contacts that render it essentially at home in the forum State, irrespective of whether the defendant's alleged liability arises from those contacts." *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 71 (Tex. 2016) (internal quotation marks omitted). "Specific jurisdiction arises when the plaintiff's cause of action arises from or relates to the defendant's contacts." *Id*. (internal quotation marks omitted).

"In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof." *Bell*, 549 S.W.3d at 559. "The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Id*. "Once it has done so, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff." *Id*. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

"The defendant can negate jurisdiction on either a factual or legal basis." *Id*. at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id*. "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id*. "Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id*.

## GENERAL JURISDICTION[1]

"[T]he general jurisdiction analysis entails a high bar." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016). "Although the likelihood of specific jurisdiction may increase in step with any substantial connection between the asserted claims and the forum state, the ties between the litigation itself and the forum state are irrelevant to the question of whether general jurisdiction exists." *Id*. "Rather, general jurisdiction relies on the defendant itself being tied up—almost entangled in a web—with the forum state." *Id*. "Continuous and systematic contacts that fail to rise to this relatively high level are insufficient to confer general jurisdiction over a nonresident defendant." *Id*.

Here, Metamorphosis's petition does not allege any continuous and systematic contacts between Baldaramos or Rejuvya and Texas to even meet its pleading burden. Even if we assume the pleading burden was met, the affidavits attached to the special appearances establish neither Baldaramos, a Nevada resident, nor Rejuvya, a Nevada limited liability company, own any property, pay any taxes, or conduct any business in Texas. Accordingly, because Metamorphosis has failed to allege any continuous and systematic contacts between the appellants and Texas, and the affidavits attached to the special appearances establish the absence of such contacts, the trial court erred if it denied the special appearances on the basis of general jurisdiction.

## SPECIFIC JURISDICTION

"[W]hen analyzing specific jurisdiction, we focus on the relationship between the forum, the defendant, and the litigation." *Bell*, 549 S.W.3d at 559. "For a Texas court to exercise specific jurisdiction over a defendant, the defendant's purposeful contacts must be substantially connected to the operative facts of the litigation or form the basis of the cause of action." *Id*. at 559-60.

---

[1] We note Metamorphosis's brief only addresses specific jurisdiction.

"Texas's interest in protecting its citizens against torts is insufficient to automatically exercise personal jurisdiction upon an allegation that a nonresident directed a tort from outside the forum against a resident." *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 152.

Metamorphosis alleged a claim for misappropriation of trade secrets against Baldaramos. "The elements of misappropriation [of trade secrets] are: (1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages." *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied); *see also Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 744 (Tex. App.—El Paso 2013, no pet.) (same); *Twister B.V. v. Newton Research Partners, LP*, 364 S.W.3d 428, 437 (Tex. App.—Dallas 2012, no pet.) (same). Metamorphosis also alleged a claim for conversion against Baldaramos and Rejuvya. "To establish liability for conversion a plaintiff must prove [1] it has a sufficient interest in the property, [2] the defendant exercised dominion and control over the property in an unlawful and unauthorized manner, [3] to the exclusion of and inconsistent with the plaintiff's rights, and [4] the defendant refused plaintiff's demand for the return of the property." *John Deloach Enters., Inc. v. Telhio Credit Union, Inc.*, 582 S.W.3d 590, 595 (Tex. App.—San Antonio 2019, no pet.); *see also Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 622 (Tex. 1992) (defining conversation "as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights") (internal quotation marks omitted).

The contacts Metamorphosis's petition alleges to establish specific jurisdiction are Baldaramos's attendance at the three-day training conference in Texas and the conversations between Baldaramos and Linton attempting to negotiate a contract that would allow Baldaramos to access and use the Trade Secrets after Baldaramos's business relationship with Cole ended. During his testimony, Linton conceded, however, that Baldaramos was authorized to attend the

training conference; therefore, his discovery of Metamorphosis's Trade Secrets at that conference and his subsequent exercise of dominion and control over the Trade Secrets through the use of Cole's license prior to the end of their business relationship could not form the basis of Metamorphosis's claims. "When communications between a nonresident and a resident are alleged as the basis for jurisdiction, we look to the quality and nature of the communications to establish purposeful availment." *Bell*, 549 S.W.3d at 560. "On their own, numerous telephone communications with people in Texas do not establish minimum contacts, and [the Texas Supreme Court has] noted that changes in technology may render reliance on phone calls obsolete as proof of purposeful availment." *Id*. "Additionally, to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Id*. Here, Linton testified he had telephone conversations with Baldaramos regarding the Trade Secrets during Baldaramos's business relationship with Cole. Because Baldaramos was authorized to access the Trade Secrets at that time, however, those telephone calls could not form the basis of Metamorphosis's claims. *See Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W.3d 479, 484 (Tex. App.—Dallas 2003, no pet.) ("Although Gustafson traveled to Texas twice for management meetings, PHNS does not assert Gustafson's [sic] breached any duties to it or committed any torts during these meetings."). With regard to the conversations occurring after the business relationship between Baldaramos and Cole ended, Linton testified he believed Baldaramos already was improperly using the Trade Secrets before that business relationship ended and further stated he told Baldaramos in those communications to cease and desist from using the Trade Secrets. Although no contract resulted from those conversations that would authorize Baldaramos's ongoing use of the Trade Secrets, the operative facts of the litigation that formed the basis of Metamorphosis's claims occurred in Nevada or California where the Trade Secrets were improperly used and where the exercise of dominion and control over the Trade Secrets was

unauthorized. Although the trial court appeared to rely on Baldaramos being a shareholder of Vitality when Cole entered into the Contract with Metamorphosis, and Linton's testimony supports that finding,[2] Baldaramos's access to the Trade Secrets was authorized while Baldaramos was a member of Vitality.[3] As a result, that access does not form the basis of Metamorphosis's claims.

Although Baldaramos and Rejuvya knew "the brunt of the injury [would] be felt by [Metamophosis], [that] knowledge alone is insufficient to establish purposeful availment." *Vinmar Overseas Singapore PTE Ltd.*, 538 S.W.3d at 131; *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) (noting "mere injury to a forum resident is not a sufficient connection to the forum"). The evidence established the allegedly tortious acts forming the basis of Metamorphosis's claims did not occur in Texas, but occurred outside the forum. *See Raiden Commodities, LP v. De Man*, No. 01-17-00181-CV, 2018 WL 3151004, at *7 (Tex. App.—Houston [1st Dist.] June 28, 2018, no pet.) (mem. op.) ("The alleged conduct underlying each of these claims occurred outside of Texas. On the facts before us, the majority of the focus of any trial would be directed to [De Man's] alleged [actions] outside of Texas.") (internal quotation marks omitted); *Info. Servs. Group, Inc. v. Rawlinson*, 302 S.W.3d 392, 402, 404 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)

---

[2] We note Linton's testimony is contrary to the allegation in Metamorphosis's petition that Baldaramos became a member of Vitality in October of 2014, which was six months after the Contract was executed.

[3] In its brief, Metamorphosis argues Texas courts have jurisdiction over Baldaramos under the forum-selection clause contained in the Contract between it and Cole based on a direct-benefits estoppel theory. As support for this argument, Metamorphosis cites *Carlile Bancshares, Inc. v. Armstrong*, No. 02-14-00014-CV, 2014 WL 3891658 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.). As the Fort Worth court noted, however, "estoppel is an equitable theory that may or may not be applied at the trial court's discretion." *Id*. at *9. Here, Metamorphosis did not file a response or argue at the hearing that the trial court should exercise its discretion to apply the direct-benefits estoppel theory. *Id*. at *7 (noting party seeking to bind nonsignatory to forum-selection clause "bore the burden to identify and prove a theory under which the nonsignatories could be bound"); *see also Vinmar Overseas Singapore PTE Ltd. v. PTT Int'l Trading PTE Ltd.*, 538 S.W.3d 126, 138 n.6 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (questioning direct-benefits estoppel theory analysis in *Carlile* noting cases cited in support of analysis "involved contractual consent to jurisdiction — not assertion of personal jurisdiction over a non-contracting party on the basis of a consent-to-jurisdiction clause signed by another party"); *cf. Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 444 (Tex. 2017) ("Courts recognizing the validity of [transaction participant] theory [to enforce forum-selection clause] have done so solely in the context of a nonsignatory defendant attempting to enforce a forum-selection clause against a signatory plaintiff, who did not want the clause enforced, and not the converse.") (internal quotation marks omitted).

("Even if we assume that Rawlinson ultimately obtained confidential information from the Texas-based servers and gave it to EquaTerra in breach of the various restrictive covenants with the appellants, there is no allegation or evidence that he did so in Texas. . . . On the facts before us, the majority of the focus of any trial would be directed at Rawlinson's alleged wrongdoing in the U.K., not Texas."). "To hold otherwise would shift the analytical focus from assessing the defendant's contacts with the forum to assessing the defendant's contacts with the plaintiff." *Vinmar Overseas Singapore PTE Ltd.*, 538 S.W.3d at 136; *see also Raiden Commodities, LP*, 2018 WL 3151004, at \*5 ("The key question is whether the *defendant's* litigation-related actions connect him to the *forum*—not whether his contacts connect him with appellants."). Because Baldaramos's purposeful contacts with Texas are not substantially connected to the operative facts of Metamorphosis's claims and do not form the basis for Metamorphosis's causes of action, the trial court erred in denying Baldaramos's and Rejuvya's special appearances.

## CONCLUSION

Because Metamorphosis did not plead sufficient allegations to establish general jurisdiction over Baldaramos and Rejuvya and because the alleged contacts did not establish specific jurisdiction, we reverse the trial court's order denying the special appearances and render judgment dismissing Metamorphosis's claims against Baldaramos and Rejuvya.

Irene Rios, Justice