**Affirmed and Memorandum Opinion filed April 23, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00687-CV

## JOHN KEVIN MUNZ AND UNIMAGINABLE VENTURES, LLC, Appellants

## V.

## CRAIG SCHREIBER, Appellee

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-81111**

### MEMORANDUM OPINION

Appellants John Kevin Munz (Munz) and Unimaginable Ventures, LLC (UV) appeal the trial court's order granting the special appearance of appellee Craig Schreiber. Tex. Civ. Prac. & Rem. Code § 51.014(a)(7). Munz and UV challenge the trial court's order by arguing that: (1) the trial court erred in granting the special appearance because it was not verified and thus did not comply with Texas Rule of Civil Procedure 120a; (2) Schreiber did not negate all alleged

jurisdictional bases such that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice; and (3) the trial court erred in denying their request for a continuance to obtain jurisdictional discovery.

We conclude the trial court did not err in granting the special appearance. Schreiber attached an affidavit verifying the material facts of his special appearance, thus satisfying Rule 120a. We also conclude that Schreiber sufficiently negated the bases alleged for personal jurisdiction over him and that he did not purposefully avail himself of the privileges and benefits of the state of Texas for purposes of exercising personal jurisdiction. Finally, we conclude that Munz and UV have not established a clear abuse of discretion based on the denial of a continuance for additional discovery. We, therefore, affirm the trial court's order granting Schreiber's special appearance.

## BACKGROUND

Munz resides in Houston and is the manager of UV, a Texas corporation with its principal office located in Harris County. Munz and UV allege in their live petition that on July 27, 2015, Munz contracted by mail or otherwise for the manufacture of a custom advertising truck with defendant Dynamic Mobile Media, L.L.C. (DMM). DMM is a foreign limited liability corporation organized under the laws of Nevada with its principal office located in Wisconsin. The contract with DMM provided that Munz would purchase and deliver to DMM at its manufacturing facility in Nevada a 14-foot box truck for a custom buildout. DMM would then design, among other things, a metal framework used to mount on the truck a folding LED screen measuring 8 feet 10 inches by 32 feet. The parties agreed to a purchase price of $142,180, with a fifty percent deposit due at the time of contract and the remaining fifty percent due five days before pick-up of the truck. The contract provided that the modified truck would be available for pick-

2

up on or before October 9, 2015. The contract also provided that the truck could be optionally delivered by a professional driver to the buyer's location. Munz and UV pleaded that Munz paid a fee to have the custom build expedited and that DMM promised to deliver the truck to Munz in Houston.

Munz and UV further allege that DMM's representative Peter Fischer, a Wisconsin resident, made several representations to Munz prior to and after the contract was executed. Fischer stated to Munz that DMM's manufacturing facilities were located in Las Vegas, that DMM operated in Las Vegas and Wisconsin, that Schreiber was Fischer's "partner and engineer," that Fischer would advertise the custom truck within a "600 mile radius of Houston," and that construction of the custom truck would commence upon delivery of the box truck to the DMM facility in Nevada. According to Munz and UV, Schreiber participated in the discussions between Fischer and Munz and affirmed Fischer's representations regarding DMM's manufacture of the truck, time schedules, and technical capabilities, and stated that Schreiber and Fischer had their own manufacturing facility in China. Schreiber averred that all of his communications with Munz "were either initiated by [Munz] by phone or electronically, or were in response to his communications by phone or electronically." Based on the representations, Munz opened a line of credit with Spirit Bank of Texas, formed UV, purchased and delivered a box truck to DMM in Nevada, and wired money from the bank in Texas to Nevada for the deposit. Payment was made by Munz to Fischer or DMM and Schreiber received no payment from Munz.

The truck was not completed by the time stated in the contract. Munz began inquiring about the status of the truck with Fischer on September 10, 2015. Fischer stated that the truck was not complete but promised to provide pictures of the truck on October 9, 2015. Munz and UV allege that over the next nine months,

3

from October 10, 2015 until July of 2016, the truck remained unfinished despite repeated inquiries from Munz and multiple promises by Fischer, Schreiber, and DMM representative Kerry Horne, a resident of Canada, that the truck would be complete soon.

Almost a full year after executing the contract for the custom build, on July 11, 2016, Munz travelled to Las Vegas to investigate the status of the truck in person. When he arrived, he was told that the truck was still not complete nor ready for delivery, but he observed the truck parked on a nearby street. Munz then entered the cab of the truck and proceeded to drive it away. Munz alleges that Schreiber pursued Munz in his own vehicle and ultimately collided his vehicle with the truck being driven by Munz, resulting in injuries to Munz. After the collision, Schreiber drove the truck back to a fenced area. The truck was never completed, despite payment of the deposit, nor was the uncompleted truck returned to Munz and UV. They allege Schreiber stripped the truck of all custom LED equipment and it remains stripped to a mere cab and chassis in Nevada.[1]

Munz and UV filed the underlying suit against DMM, Fischer, Horne, and Schreiber, asserting claims against all defendants for violations of the Texas Deceptive Trade Practices Act, breach of contract, fraud, negligent misrepresentation, and "money had and received/unjust enrichment." Munz and UV also asserted claims against Schreiber for assault and conversion. Munz and UV asserted liability against Schreiber, Fischer, and Horne as officers or partners of DMM, and as part of a conspiracy. The petition states that the trial court has jurisdiction over the defendants because they: (1) engaged in business in Texas by contracting with a Texas resident that was to be performed in whole or in part in Texas; (2) committed a tort in whole or in part in Texas; and (3) purposefully

---

[1] Munz averred that Schreiber claims a mechanic's lien against the vehicle.

4

availed themselves of the privileges and benefits of conducting business in Texas.

Schreiber filed a special appearance seeking dismissal from the lawsuit for lack of personal jurisdiction. Although the motion was not verified, Schreiber attached an affidavit swearing to facts disputing the alleged bases of jurisdiction. Schreiber averred, among other things, that he is a resident of Las Vegas, Nevada, never owned, operated or worked at a business in Texas, owns no real estate or bank accounts in Texas, has no agents, employees, or sales representatives in Texas, is not obligated to pay taxes in Texas, and has never travelled to Texas in pursuit of the work contracted for by Munz. Munz and UV filed an objection and response to the special appearance, attaching an affidavit from Munz.[2] After an oral hearing, at which Schreiber appeared telephonically, the trial court granted the special appearance, dismissing Schreiber from the lawsuit. The trial court issued no findings of fact or conclusions of law and no findings or conclusions were requested. This appeal followed.

## ANALYSIS

Munz and UV list the following issues in their briefing: (1) whether Schreiber's special appearance complied with Rule 120a; (2) whether the trial court committed error by sustaining Appellee's special appearance; (3) whether Schreiber negated all alleged jurisdictional bases set out in the Original Petition by presenting sufficient evidence that he had no minimum contacts with Texas; (4) whether Schreiber negated all alleged jurisdictional bases set out in the Original Petition by presenting sufficient evidence that, even if he had contacts with Texas, the exercise of jurisdiction would offend traditional notions of fair play and

---

[2] In their response to the special appearance, Munz and UV made various objections and a motion for continuance to conduct jurisdictional discovery. The record contains no ruling on the objections or request for a continuance.

5

substantial justice; (5) if Schreiber negated all alleged jurisdictional bases set out in the Original Petition, whether Munz and UV showed that the court had jurisdiction over Schreiber when the burden shifted; and (6) whether the trial court's denial of Munz and UV's request for a continuance to obtain jurisdictional discovery was harmful error. We first address Munz and UV's challenge to the trial court's order based on their argument that Schreiber's special appearance did not comply with Rule 120a because it was not verified. We next address issues two through five together as they address the merits of whether the trial court properly determined that personal jurisdiction over Schreiber is lacking. We then turn to issue six regarding the denial of a continuance to conduct jurisdictional discovery.

## I. The lack of a verification on the special appearance is not fatal because Schreiber's affidavit is sufficient.

Texas Rule of Civil Procedure 120a provides that a special appearance may be made by a party for the purpose of objecting to the exercise of jurisdiction of the court over the person or property of the party and that "[s]uch special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion. . .." Tex. R. Civ. P. 120a(1). Schreiber filed his special appearance before any other plea, pleading, or motion, asserting that Texas courts lack personal jurisdiction over him. Schreiber did not verify his special appearance, but he supported each of the factual statements in the special appearance with a citation to his attached affidavit that in turn averred to the facts contained in the special appearance.

Citing *Casino Magic Corp. v. King*, Munz and UV argue that the trial court erred in finding a lack of personal jurisdiction because Schreiber did not verify the special appearance. 43 S.W.3d 14, 18 (Tex. App.—Dallas 2001, pet. denied) (sub. op.). In *Casino Magic Corp.*, the court held that the special appearance in that case

6

was defective because it was unverified and contained several jurisdictional facts that the witness did not attest to in the attached affidavit. *Id.* In *Washington DC Party Shuttle, LLC v. IGuide Tours*, we found *Casino Magic Corp.* distinguishable where the affidavit attached to an unverified special appearance contained averments of each of the relevant jurisdictional facts stated in the special appearance. 406 S.W.3d 723, 730–31 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). As in *Washington DC Party Shuttle*, Schreiber's affidavit in this case attests to the relevant jurisdictional facts set forth in the special appearance. On appeal, Munz and UV do not identify any jurisdictional fact stated in Schreiber's special appearance that is not repeated and sworn to by Schreiber in his affidavit. We therefore conclude that Schreiber's affidavit sufficiently verified the special appearance.[3] *Id.* at 731.

Munz and UV also argue Schreiber's affidavit is insufficient for failure to include an unequivocal statement that the facts are "true and correct" or based on personal knowledge. In *Humphreys v. Caldwell*, the Supreme Court of Texas explained that "[a]n affidavit which does not positively and unqualifiedly represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge is legally insufficient." 888 S.W.2d 469, 470 (Tex. 1994) (per curiam) (orig. proceeding). The affidavit at issue in *Humphreys* stated the affiant's statements were made on his "own personal knowledge and/or knowledge which he has been able to acquire upon inquiry." *Id.* The Court held the statement failed to "unequivocally show that they are based on personal knowledge." *Id.* The

---

[3] Munz and UV also cite *Villalpando v. De La Garza*, 793 S.W.2d 274, 276 (Tex. App.—Corpus Christi 1990, no writ) in support of their contention that the lack of a verification renders the special appearance defective. We likewise find *Villalpando* distinguishable. In that case, the defendant filed an unsworn special appearance and failed to present any evidence negating jurisdiction. *See Villalpando*, 793 S.W.2d at 276. In this case, Schreiber attached his sworn affidavit setting forth the facts referenced in his special appearance.

7

affidavit was also insufficient because it contained no representation at all that the facts disclosed in the affidavit were true. *Id.* at 470–71.

> Schreiber's affidavit in this case contains the following statements:

> I am over 18 years of age and not under any restraint or legal disability, am competent to testify to the matters state [sic] herein, and make this affidavit based upon my own personal knowledge and observations.

> * * *

> I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and if sworn as a witness, I could and would testify competently thereto.

The Schreiber affidavit is sworn and notarized. Unlike the affidavit found insufficient in *Humphreys*, Schreiber's affidavit is not qualified. It contains no "and/or" language and unqualifiedly attests that the statements made are based on his personal knowledge and observations. Further, the affidavit declares that the "foregoing" is "true and correct." The affidavit is legally sufficient. *See Teal v. State*, 230 S.W.3d 427, 431–32 (Tex. App.—San Antonio 2007, pet. denied).

We overrule Munz and UV's first issue.

## II.    Texas courts lack personal jurisdiction over Schreiber.

In issues two through five, Munz and UV contend the trial court erred in granting Schreiber's special appearance because Schreiber had sufficient minimum contacts with Texas to permit the assertion of personal jurisdiction. We have reviewed the record and conclude the trial court correctly determined that Texas courts lack personal jurisdiction over Schreiber for the claims asserted in this lawsuit.

## A.  Standards of review

A trial court's determination of whether it may exercise personal jurisdiction over a party is a question of law that we review de novo.  *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).  When, as in this case, the trial court does not issue findings of fact and conclusions of law, all relevant facts that are necessary to support the judgment and supported by the evidence are implied in favor of the trial court's ruling.  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).   Because our appellate record includes the reporter's record and clerk's record, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency.  *See id.*; *Washington DC Party Shuttle*, 406 S.W.3d at 729.

We review the trial court's implied factual findings by applying the same standards used in reviewing jury findings.  *Washington DC Party Shuttle*, 406 S.W.3d at 729.  When reviewing for legal sufficiency, we view the evidence in the light most favorable to the finding and indulge all reasonable inferences supporting the finding.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2006).  We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not.  *Id.*  In reviewing for factual sufficiency of the implied findings, we consider all the evidence and will set aside a finding only if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.  *Washington DC Party Shuttle*, 406 S.W.3d at 729.  "The factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony."  *Id.*  We review conclusions of law de novo.  *Id.*

## B.  Law applicable to the assertion of personal jurisdiction

The exercise of personal jurisdiction over a nonresident defendant is permitted when: (1) the Texas long-arm statute grants jurisdiction; and (2) federal

and state constitutional guarantees of due process are satisfied. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). The Texas long-arm statute provides that a nonresident does business in this state if the nonresident contracts by mail or otherwise with a Texas resident and the contract is to be performed in whole or in part in Texas or if a nonresident commits a tort in whole or in part in this state. Tex. Civ. Prac. & Rem. Code § 17.042(1), (2). The plaintiff is required to first plead allegations sufficient to confer jurisdiction under the long-arm statute. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149. The burden then shifts to the nonresident defendant to negate all potential bases pleaded for personal jurisdiction. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). If the plaintiff does not plead facts bringing the defendant within reach of the long-arm statute, "the defendant need only prove that it does not live in Texas to negate jurisdiction." *Id.* at 658–59.

Federal and state constitutional guarantees of due process are satisfied if the defendant has established minimum contacts with the state such that the assertion of jurisdiction does not offend "traditional notions of fair play and substantial justice." *See Searcy*, 496 S.W.3d at 66 (citing *Int'l Shoe Co. v. Washington*, 236 U.S. 310, 316 (1945)); *see also Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). Minimum contacts exist when a nonresident "'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Bell*, 549 S.W.3d at 559 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). Courts consider three factors to determine whether a nonresident has purposefully availed itself of the privilege of conducting business in Texas: (1) whether the defendant's contacts are its own, rather than the unilateral activity of another party or third person; (2) whether the contacts are

10

purposeful, rather than random, fortuitous, or attenuated; and (3) whether the defendant sought some benefit, advantage, or profit by availing itself of Texas. *See Bell*, 549 S.W.3d at 559; *Washington DC Party Shuttle*, 406 S.W.3d at 728.

Minimum contacts with a forum may give rise to either general or specific jurisdiction. *Searcy*, 496 S.W.3d at 67. In this case, Munz and UV have not pleaded or alleged in response to the special appearance[4] that Schreiber has continuous or systematic contacts with Texas sufficient to subject him to general jurisdiction. Thus, we assess whether Schreiber has sufficient minimum contacts for the assertion of specific jurisdiction. Specific jurisdiction is proper where the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *Kelly*, 301 S.W.3d at 658. In determining whether specific jurisdiction exists, we consider the relationship among the defendant, the forum, and the litigation. *Id*. There must be a substantial connection between the defendant's contacts with the forum state and the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). We perform the specific jurisdiction analysis on a claim-by-claim basis unless all claims arise from the same forum contacts. *Moncrief*, 414 S.W.3d at 150–51. In this case, all of the claims arise out of the same alleged contacts, with the exception of the claims for assault and conversion. Munz and UV do not assert on appeal that the contacts underlying the assault and conversion claims support jurisdiction in Texas, and we note all actions underlying those claims occurred in Nevada.

---

[4] In determining the bases asserted for personal jurisdiction over a defendant, we consider the plaintiff's pleadings as well as the plaintiff's response to the special appearance. *See Washington DC Party Shuttle*, 406 S.W.3d at 738.

**C.    The asserted contacts are insufficient to establish specific jurisdiction.**

On appeal, Munz and UV allege that Schreiber made the following contacts with Texas:

- Schreiber and Fischer were partners of DMM.

- Schreiber promised to perform a contract in whole or in part in Texas; Schreiber promised to deliver a vehicle to Texas and promised to purchase a vehicle from Texas.

- Schreiber solicited the sale of, marketed, advertised and sold LED screens over the internet on a nationwide basis, including Houston, Texas. This includes use of an interactive website.

- Schreiber directed all communications to Munz and UV by email and telephone to Houston, Texas.

- Schreiber made misrepresentations to Texas residents.

- Deemed admissions were entered into evidence at the hearing on the special appearance.

We address each of the alleged contacts and the evidence relevant to those contacts in turn, bearing in mind that "[j]urisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will. Nor can it turn on whether a plaintiff merely alleges wrongdoing—again as virtually all will." *Bell*, 549 S.W.3d at 560 (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005)). That is, we do not equate the jurisdictional inquiry with the underlying merits of the claims. *See id.*

### 1. *Schreiber and Fischer as partners of DMM*

In their petition, Munz and UV pleaded: "In discussions leading up to the contract, Mr. Fischer represented that DMM's manufacturing facilities were located in Las Vegas, Nevada, and that DMM operated its business in Las Vegas and Kenosha, Wisconsin. In those discussions, Mr. Fischer described Mr. Schreiber as Mr. Fischer's 'partner and engineer' and that Mr. Fischer told Mr.

12

Munz that he would be 'very impressed when you see our manufacturing facility in Las Vegas.'" For purposes of imposing liability, the petition asserts that Schreiber, Fischer and Horne "represented themselves to be officers and/or partners of DMM." Munz's affidavit attached to his response to the special appearance states "Mr. Fischer described Mr. Schreiber as Mr. Fischer's 'partner and engineer.'" Munz and UV contend on appeal that the trial court erred because Schreiber failed to negate personal jurisdiction of the partnership. We disagree.

Munz and UV do not argue that Schreiber himself ever represented that he and Fischer were partners—instead, they allege only that Fischer described the two as partners. When assessing a nonresident defendant's contacts with the state, we consider only the contacts of the defendant himself rather than actions of another defendant or third party. *See Moncrief*, 414 S.W.3d at 151–52 (stating "the unilateral activity of another person cannot create jurisdiction"); *Vinmar Overseas Singapore PTE Ltd. v. PTT Int'l*, 538 S.W.3d 126, 136 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that co-defendant's act in signing agreement that contained Texas choice of law provision did not support jurisdiction over non-signatory nonresident). The only statements in the record attributed to Schreiber himself regarding a purported partnership contest the existence of one. Munz's affidavit states: "Mr. Schreiber declared that he was never a partner of Mr. Fischer or involved with DMM." Schreiber's affidavit states: "[n]either Fischer nor 'DMM' are related to my businesses in any way." Munz and UV did not present documentary evidence demonstrating a partnership or any other legal relationship between Schreiber and any defendant. Given the evidence, the trial court could reasonably credit the statements of Schreiber denying a partnership with Fischer or affiliation with DMM and find that Munz and UV did not establish that Schreiber was a partner of DMM as alleged. *See Wormald v. Villarina*, 543 S.W.3d 315, 326

(Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding that, given conflicting evidence of location of defendant's residence, trial court could credit statement of a mistake in affidavit and find defendant was not a resident).

2. *Promise to perform a contract in whole or in part in Texas*

Munz and UV next argue that minimum contacts exist from evidence of Schreiber's promise to perform a contract in whole or in part in Texas. Although Munz and UV alleged in their petition that all defendants, including Schreiber, breached the July 27, 2015 contract, only Munz and Fischer, on behalf of DMM, executed the contract. Schreiber is not a party to the agreement. Schreiber states in his affidavit that he lives and works in Las Vegas, Nevada, he is the principal officer, director and shareholder of a number of businesses in Nevada that manufacture LED displays, that he has never sold a product in Texas or had dealings with any person in Texas for business or personal reasons, he never received payments from Munz and UV, and that neither Fischer nor DMM are related to his businesses in any way. Schreiber has thus negated as a basis of jurisdiction the claim that he entered into the contract made the basis of Munz and UV's breach of contract claim.

Even if the contract could somehow be imputed to Schreiber, however, there is no evidence to support Munz and UV's allegation that the contract was to be performed in whole or in part in Texas. Per the terms of the contract, the truck was to be delivered to Nevada, all of the modifications to the truck would occur at the facility in Nevada, and the truck would be available for pick-up once completed in Nevada, unless the purchaser chose delivery by a professional driver to the buyer's location. The only evidence of activity under the contract occurring in Texas is the wiring of funds from Munz from his Texas bank to Nevada for the deposit. But "the mere act of accepting the transfer of money drawn on a Texas bank is "'of

14

negligible significance for purposes of determining whether [a foreign defendant] had sufficient contacts in Texas.'" *Bell*, 549 S.W.3d at 564 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–17 (1984)).

Munz and UV point to a contractual promise to deliver the completed vehicle to Texas as evidence the contract was to be completed in whole or in part in Texas. Although the contract itself states that the ship to location is "to be determined," Munz stated in his affidavit that "DMM promised to deliver the Custom LED Truck to me in Houston, Harris County, Texas." Schreiber does not deny or dispute that the truck was to be delivered to Texas. Nevertheless, delivery of the completed vehicle to Texas does not support the assertion of jurisdiction because it is the result of Munz's unilateral choice, rather than a purposeful contact by Schreiber—who has not been shown to act for DMM. *See Michiana Easy Livin' Country*, 168 S.W.3d at 787. When Texas is the destination of delivery due to the plaintiff's unilateral choice, such contact is merely fortuitous and will not support jurisdiction. *See Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 654 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (discussing *Michiana*).

Munz and UV also contend that the contract was to be performed in whole or in part in Texas because DMM promised to purchase a car in Texas. They do not point to a specific provision in the contract to support this argument, but we presume Munz and UV refer to the statement in the DMM contract that "[i]f Buyer ever decides they want to sell their truck, Dynamic Mobile Media will guarantee that it will sell the Buyers Truck within Ninety (90) Days of written notification and if we cannot sell it within that time frame we will buy it back for the amount paid less Ten (10%) Percent during the first 12 Months of ownership or less Fifteen (15%) Percent from 13 Months to 24 Months." This provision in the

contract does not expressly provide that DMM is agreeing to purchase a car in Texas, as it makes no reference to a place of purchase. To construe it as a promise to purchase a car in Texas, the trial court would have to presume that the truck would be in Texas at some specified time in the future when Munz and UV may or may not decide to sell the truck to a third party or, if none is found, then to DMM. We conclude this purported contact is too random, fortuitous, or attenuated to support jurisdiction and would again be the result of unilateral activity of Munz and UV. *See id.* The July 27, 2015 contract between Munz and DMM does not support the assertion of jurisdiction over Schreiber.

3. *Soliciting the sale of, marketing, advertising, and selling LED screens on the internet through interactive website*

Munz and UV next point to evidence that Schreiber "solicited the sale of, market, advertise and sell LED screens over the internet on a nationwide basis, including Houston, Texas." Munz averred in his affidavit that Fischer, Horne, Schreiber and DMM maintain and operate interactive websites allowing buyers of LED screens, including Munz, to submit comments and questions to them. The sites include colorledsigns.com, hdav.com, hdavoutdoor.com and seedisplays.com. Munz further states that the LED signs are available to Texas residents on their websites. Munz identifies one sale of an LED screen to a person called Mickey in Houston, Texas, in which Mickey complains of the quality of the LED screen sold and complains about Schreiber and Fischer. Munz does not, however, state anywhere that he found DMM through one of these websites or even ordered the custom truck build from these websites.

Schreiber does not address any websites in his affidavit. He does aver that he has never solicited business in Texas, has never directly marketed products or services in Texas, never purchased or sold equipment or parts that originate or

16

have outlets in Texas, never designed a product for the Texas market, advertised in Texas, established channels for providing regular advice to customers in Texas, or marketed a product through an agent or distributor in Texas.

Given this evidence the trial court could make an implied finding of fact that Schreiber did not solicit Munz's business related to the custom build of the truck, did not directly market an LED product or service to Munz, and never purchased or sold parts that originated or had an outlet in Texas for the custom truck. On this record, Munz and UV have not provided evidence of contacts by Schreiber that relate to the material, operative facts of the litigation. *See Moki Mac*, 221 S.W.3d at 588 (holding that promotional activities in Texas were not sufficiently related to claims for death occurring in Arizona to satisfy due process concerns).

The trial court also could have found that Schreiber did not have an established channel for providing regular advice to Munz or Texas, though he apparently had some part in the websites that allowed customers to communicate and order LED signs. Although not clearly stated, Munz and UV presumably contend that Schreiber's mere use of interactive websites for his LED screens on the internet allow assertion of jurisdiction anywhere, including Texas. We disagree. When assessing contacts based on interactive websites, we evaluate the defendant's Texas contacts according to a sliding scale similar to that used in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *See Washington DC Party Shuttle*, 406 S.W.3d at 737. At one end of the scale are passive websites, in which the nonresident defendant has simply posted information on the website that can be viewed in other jurisdictions. *Id.* Such websites do not give rise to personal jurisdiction. *Id.* On the other end of the scale are cases in which residents of the forum can enter into contracts with the owner of the website and show the knowing and repeated transmission of computer files

over the internet. *Id.* In the middle of the scale are cases, like this one, involving interactive websites that allow an exchange of information with the owner of the website. *Id.* Courts in those cases examine the level of interactivity and nature of the exchange of information to determine whether sufficient contacts exist with the forum. *Id.*

In this case, there is evidence that Schreiber is somehow connected to websites that sell LED screens that allow buyers to submit comments and questions via email. There is also evidence that one customer in Texas complained on a different internet forum about Fischer, Schreiber, DMM, and HDAV LLC (a Nevada company apparently formed by Schreiber) regarding an LED screen, though it is not clear whether the customer used the interactive website to purchase the screen. Although a single contact with Texas can, in some cases, suffice to invoke jurisdiction in Texas,[5] in this case the single contact does not relate to the product purchased by Munz from DMM and does not show a significant level of activity in Texas by Schreiber. *See Moki Mac*, 221 S.W.3d at 577 ("Thus, the mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. Instead, the facts alleged must indicate that the seller intended to serve the Texas market."). There is no evidence that Munz and UV used any of these websites to purchase the custom truck at issue. We conclude that in this case the "level of interactivity and commercial nature of the exchange of information" occurring on the websites cited by Munz and UV is insufficient to establish purposeful availment of the privileges and benefits of conducting activities in Texas.

---

[5] *See Michiana Easy Livin' Country*, 168 S.W.3d at 787 ("It is true that in some circumstances a single *contract* may meet the purposeful-availment standard, but not when it involves a single *contact* taking place outside the forum state.") (emphasis in original).

18

4. *Directing communications, including alleged misrepresentations, to Munz by email and telephone*

Munz and UV also argue Schreiber has minimum contacts with Texas sufficient to support jurisdiction based on alleged misrepresentations made in email and telephone communications. We of course do not consider the merits of Munz and UV's claim that Schreiber made misrepresentations in these communications because to do so would improperly equate "the jurisdictional inquiry with the underlying merits." *Bell*, 549 S.W.3d at 560. Instead, we must consider the quality and nature of the communications to determine whether they show purposeful availment by Schreiber.

In *Old Republic National Title Insurance Company v. Bell*, the Supreme Court of Texas explained:

> When communications between a nonresident and a resident are alleged as the basis for jurisdiction, we look to the quality and nature of the communications to establish purposeful availment. . . On their own, numerous telephone communications with people in Texas do not establish minimum contacts, and we have noted that changes in technology may render reliance on phone calls obsolete as proof of purposeful availment.

549 S.W.3d at 560; *see also Riverside Exports, Inc.*, 362 S.W.3d at 655 (applying same rationale to email communications); *Alenia Spacio, S.p.A. v. Reid*, 130 S.W.3d 201, 204 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (stating "numerous telephone and facscimile communications with people in Texas relating to an alleged contract do not establish minimum contacts"). We have noted that certain communications between the resident plaintiff and nonresident defendant do not support jurisdiction even when the plaintiff informs the defendant that the plaintiff is located in Texas. *See Vinmar Overseas Singapore*, 538 S.W.3d at 134 n.2 (finding unpersuasive fact that plaintiff representative informed defendant that

19

representative was located in Houston because it would allow jurisdiction on the basis of the unilateral activity of the plaintiff rather than on purposeful contacts of defendant).

In his affidavit, Munz states that Schreiber directed all his communications to Munz by email and telephone in Houston, and that he told Schreiber that he was located in Houston and received emails and telephone calls from them in Texas. Schreiber states in his affidavit that: "[a]ll communications I was involved with in this matter that included [Munz] were either initiated by [Munz] by phone or electronically, or were in response to his communications by phone or electronically." Thus, the undisputed evidence shows that any communications by phone or email were initiated by Munz, rather than Schreiber. When the evidence shows that the resident plaintiff initiated the communications with the nonresident defendant, the communications typically do not establish purposeful availment unless there is evidence of high frequency of contact or intent to create an ongoing or lengthy relationship. *See Peters v. Top Gun Exec. Group*, 396 S.W.3d 57, 69 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Riverside Exports, Inc.,* 362 S.W.3d at 655–56 (concluding court lacked personal jurisdiction when the resident-buyer "initiate[d] the purchase of equipment outside Texas by contacting a company outside Texas that does not direct marketing to Texas"). The communications by telephone and email in response to Munz's inquiries do not support jurisdiction over Schreiber.

5. *The deemed admissions*

At the hearing on the special appearance the trial court admitted into evidence thirteen deemed admissions resulting from Schreiber's failure to respond to a request for admissions. Munz and UV reference the deemed admissions, but do not point out which of the deemed admissions would support jurisdiction over

Schreiber. Rule 38.1(i) of the Texas Rules of Appellate Procedure requires the appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Nevertheless, we have reviewed the admissions and find that for the majority of the admissions, the evidence provided is either already contained in Munz's affidavit and addressed above or is irrelevant.

There are three deemed admissions that are not cumulative of evidence found in Munz's affidavit and that are relevant, though we conclude they do not change the jurisdictional analysis. Those admissions include:

- Admission 3, that Schreiber has "solicited the sale of, sold, marketed, advertised, and sold LED screens in Texas;"

- Admission 5, that Schreiber has "conducted business with Peter Fischer in Texas within the last five (5) years;"

- Admission 8, that Schreiber has "conducted business with Dynamic Mobile Media in Texas within the last (5) years."

Even assuming the truth of each of the above statements, the statements are so general that they do not show contacts of Schreiber related to the operative facts of the litigation. None of the admissions are specific to the sale and construction of the custom truck by DMM to Munz. As a result, the deemed admissions do not establish sufficient contacts for purposes of asserting specific jurisdiction over Schreiber. *See Moki Mac*, 221 S.W.3d at 579, 588 (holding that, although defendant's marketing in Texas and solicitation of Texas customers was sufficient to show purposeful contact with Texas, the contact was not related to the operative facts of the litigation and did not support jurisdiction).

We conclude that Munz and UV have not established that Schreiber had sufficient minimum contacts with Texas to allow for the assertion of personal jurisdiction consistent with due process. We overrule issues two through five.

21

**III.** **The trial court did not abuse its discretion by denying a continuance.**

In their last issue, Munz and UV contend the trial court erred by denying their request for a continuance to allow them the opportunity to cross-examine Schreiber. In their response to the special appearance, Munz and Schreiber stated that if the court was inclined to grant the special appearance, the trial court should grant a continuance under Texas Rule of Civil Procedure 120a(3) to allow them to take Schreiber's deposition. We conclude the trial court did not err in denying the request for a continuance.

As an initial matter, we note that our record does not contain an order or express ruling on Munz and UV's request for a continuance. Texas Rule of Appellate Procedure 33.1, requires a party to preserve a complaint for appeal by presenting the complaint to the trial court and obtaining a ruling, either expressly or implicitly. Tex. R. App. P. 33.1(a)(2). Although the record does not contain an express ruling on the request for a continuance, we conclude that the trial court impliedly overruled the request for a continuance by considering and ruling on the special appearance, thereby preserving the issue for our review. *See Favour Leasing, LLC v. Mulligan*, No. 05-13-01000-CV, 2014 WL 4090130, at *10 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem. op. on reh'g) (holding trial court implicitly denied motion for continuance of special appearance hearing where trial court proceeded with hearing and granted special appearance); *see also In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003) (concluding error preserved by implicit ruling on request for bench warrant where court proceeded to trial without issuing the warrant).

We review a trial court's order denying a motion for continuance for additional discovery under a clear abuse of discretion standard. *See BMC Software*, 83 S.W.3d at 800. A trial court clearly abuses its discretion when it

22

"reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.*

Rule 120a(3) of the Texas Rules of Civil Procedure allows a trial court to order a continuance of a special appearance hearing to permit jurisdictional discovery when it appears from the affidavits of a party opposing a special appearance that he cannot, for reasons stated in the affidavit, present facts essential to justify his opposition to the special appearance. *See* Tex. R. Civ. P. 120a(3); *Lamar v. Poncon*, 305 S.W.3d 130, 139 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A party's due diligence in seeking the discovery requested is a factor to consider in determining whether the trial court abused its discretion in denying a continuance for jurisdictional discovery. *See BMC Software*, 83 S.W.3d at 800-01 (holding no abuse of discretion shown where party did not file motion to compel discovery); *Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 434 & n.33 (Tex. App.—Houston [14th Dist.] 2014, *aff'd sub nom., Searcy*, 496 S.W.3d 58) (noting factors showing due diligence support right to a continuance).

Here, Munz and UV complain of the denial of their motion for continuance to take the deposition of Schreiber. With regard to due diligence, their attorney's affidavit supporting the motion for continuance states only: "Plaintiffs have been unable to secure this information despite diligent effort." There is no explanation contained in the affidavit of any attempts to depose Schreiber or why they have been unsuccessful in obtaining Schreiber's deposition before the hearing. Conclusory statements of due diligence are generally insufficient. *See Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Rule 120a(3) allows a continuance when it appears that the party opposing the special appearance cannot "for reasons stated in the affidavit" present facts essential to justify its opposition. *See* Tex. R. Civ. P. 120a(3). Because

23

Munz and UV have not established due diligence in seeking Schreiber's deposition nor explained why they cannot present facts essential to justify their opposition, we cannot say the trial court committed a clear abuse of discretion in denying additional time to cross-examine Schreiber. *See BMC Software*, 83 S.W.3d at 800-01.

We overrule issue six.

## CONCLUSION

Having overruled Munz and UV's six issues on appeal, we affirm the trial court's order granting Schreiber's special appearance.

/s/     Jerry Zimmerer
        Justice

Panel consists of Justices Jewell, Zimmerer, and Spain.